UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.

REGINA BRANIGAN,            )
                            )
    Plaintiff,              )
                            )
vs.                         )
                            )
LYNN UNIVERSITY, INC., a Florida )
corporation, d/b/a LYNN UNIVERSITY,)
                            )   **COMPLAINT**
    Defendant.              )
                            )
_____/

Plaintiff, REGINA BRANIGAN ("BRANIGAN"), sues Defendant, LYNN UNIVERSITY, INC. ("LYNN"), and alleges:

## INTRODUCTION

1. BRANIGAN, a former employee of LYNN, brings this action under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* to redress LYNN'S interference with, and discrimination of, BRANIGAN'S exercising of rights under the FMLA.

## JURISDICTION AND VENUE

2. This action arises under the FMLA for which this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

3. Venue is proper in this District under 28 U.S.C. § 1391(a) because LYNN resides and conducts business in this District and because all events and omissions giving rise to the claims occurred in this District.

## GENERAL ALLEGATIONS

4. BRANIGAN was employed by LYNN for approximately eight (8) years as the

Creative Director where her job duties included creative strategy development and brand building externally and internally.

5. On March 5, 2021 BRANIGAN's four (4) year old daughter was hospitalized with diabetic ketoacidosis, a serious complication of diabetes. She was admitted to a pediatric Intensive Care Unit where she remained for five (5) days. It was during this hospitalization that BRANIGAN first learned that her daughter had Type 1 diabetes.

6. BRANIGAN immediately notified her supervisor, Sherrie Weldon, direct reports and director level peers at LYNN, since she would not able to report to work and/or otherwise be unavailable during her daughter's hospitalization.

7. BRANIGAN returned to work on March 10, 2021, and either that day or the following had a zoom meeting with Ms. Weldon where she shared her daughter's diagnosis and the level of care that she would be required to provide her daughter at least during the early stages.

8. Recognizing that time away from work would be required, BRANIGAN asked Ms. Weldon about taking leave under the Family and Medical Leave Act ("FMLA").

9. Ms. Weldon's initial reaction appeared to be one of relief as she responded with: "Oh, I was so concerned you were going to quit."

10. BRANIGAN assured Ms. Weldon that she was not quitting as she needed her job and the health benefits more than ever as her daughter's life was dependent on insulin treatments that are prohibitively expensive without insurance.

11. Ms. Weldon than discouraged BRANIGAN from seeking leave under the FMLA, reminded her of the cabinet level goals she needed to meet as well as the approaching deadlines for the high-level strategic work they were working on.

12. Ms. Weldon advised BRANIGAN that she should take "sick time as needed" and that she would be flexible with her hours as long as the work was getting done.

13. BRANIGAN felt intimidated and that her job might be in jeopardy if she pushed further for leave under the FMLA, however, she did ask that Human Resources be notified of her daughter's diagnosis and of her need to care for her as this was not a temporary condition or something her daughter was going recover from.

14. Ms. Weldon again discouraged BRANIGAN from doing so stating that it was "not necessary."

15. The informal, flexible sick-time "plan" Ms. Weldon proposed did not go well. As an example, when her daughter again presented with ketones in her urine, BRANIGAN sought time off to implement what is referred to as a "sick protocol" to avoid hospitalization. Ms. Weldon denied it due to an approaching project deadline for a presentation.

16. Ms. Weldon told BRANIGAN that she needed to "push through" and continue to work to the end of the week.

17. In the four months leading up to what would be the termination of BRANIGAN's employment, she had multiple conversations with Ms. Weldon sharing the physical and emotional struggles she was enduring having to work full-time hours to complete what was being required of her and also having to provide the care and treatment necessary to keep her daughter alive.

18. Despite these conversations, Ms. Weldon continued to steer BRANIGAN away from taking leave under the FMLA and continued to push and add priority work with aggressive deadlines making time off near impossible.

19. During the month of July, some of the critical projects were coming to an end and BRANIGAN was moving on to newer projects with approximate three (3) month deadlines. During this transition, BRANIGAN was given a few vacation days in August that suited the work schedule.

20. Despite being pulled in two very different directions, BRANIGAN's work

performance did not falter.  She was praised by Ms. Weldon and told she was doing a great job managing her work and team.  Even the President of LYNN expressed that BRANIGAN had recently produced the "best" campaign he had seen.

21. BRANIGAN advised Ms. Weldon that her daughter would be entering kindergarten and that she was scheduled to meet with the administration on August 5, 2021 to arrange for a "504 Plan."  Section 504 is part of a federal civil rights law known as the Rehabilitation Act of 1973 which prohibits discrimination against students with disabilities and guarantees them a free and appropriate public education.

22. BRANIGAN shared that she was hopeful that her current challenges in caring for her daughter would be alleviated by the nursing care provided by the school, but that her attention would still be required for aftercare and transportation to and from school.

23. BRANIGAN also shared with Ms. Weldon that she was going to wait to make any leave decisions until she knew how the change in schools would impact her work schedule.

24. BRANIGAN, however, was denied the ability to apply for intermittent leave.  On July 29, 2021, just one week after sharing this information with Ms. Weldon – and just before the scheduled meeting to discuss the 504 Plan and before she could take her vacation days in August – Ms. Weldon terminated BRANIGAN's employment.

25. The shared reason for the termination – "restructuring" – was nothing more than a ruse, a pretext, to cover up Ms. Weldon's unwillingness to accommodate BRANIGAN's needs and provide her the necessary leave she needed – and was entitled to – under the FMLA.

26. The purported "restructuring" simply did not occur.  Just a month prior, software was purchased for BRANIGAN and her team to use and they were actively being trained on the software.

27. The "restructuring" was purportedly to shift to digital campaigns and a reduction in print work but this shift occurred over a year prior.

28. Following the termination meeting, BRANIGAN spoke with Aaron Greenburg, Director of Employee Services, and shared that she felt the termination was due to her need for leave under the FMLA. When asked if the "restructuring" decision was made by administration, Mr. Greenburg confirmed that it was a decision made by Ms. Weldon and her only.

29. BRANIGAN has retained the undersigned counsel and agreed to pay a reasonable attorney's fee.

30. All conditions precedent have been satisfied and/or waived.

## COUNT I: FMLA
### (Interference)

31. BRANIGAN adopts and realleges paragraphs 1 through 30 as if fully set forth herein.

32. The FMLA provides, in pertinent part, that it "shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1)

33. At all times material hereto, BRANIGAN was an "eligible employee" within the meaning of the FMLA.

34. LYNN knew or should have known that BRANIGAN qualified and was eligible for leave under the FMLA and that it had an obligation to permit BRANIGAN to take that protected leave and to not interfere with her taking of such leave.

35. LYNN, an "employer" within the meaning of the FMLA, willfully discriminated against, interfered with, restrained and/or denied BRANIGAN'S rights under the FMLA by interfering with the leave.

ARTHUR T. SCHOFIELD, P.A. │Via Jardin │ 330 Clematis Street │Suite 207 │ West Palm Beach, FL 33401
(561) 655-4211 │ Facsimile (561) 655-5447
www.flalabor.com
5

36. As a proximate result of the termination of BRANIGAN'S employment, she lost wages, benefits and other forms of compensation associated with the employment.

WHEREFORE, BRANIGAN demands judgment against LYNN as follows:

A. Back pay and benefits;

B. Attorney's fees and costs;

C. Injunctive relief;

D. Liquidated damages; and

E. Such other relief as this Court shall consider to be fair and equitable.

## COUNT II: FMLA
### (Discharge/Retaliation)

37. BRANIGAN adopts and realleges paragraphs 1 through 30 as if fully set forth herein.

38. The FMLA provides, in pertinent part, that it "shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."  29 U.S.C. § 2615(a)(2)

39. At all times material hereto, BRANIGAN was an "eligible employee" within the meaning of the FMLA.

40. LYNN knew or should have known that BRANIGAN qualified and was eligible for leave under the FMLA and that it had an obligation to permit BRANIGAN to take that protected leave and to not discharge or otherwise discriminate against BRANIGAN for seeking or taking of such leave.

41. LYNN, an "employer" within the meaning of the FMLA, willfully discriminated against, interfered with, restrained and/or denied BRANIGAN'S rights under the FMLA by terminating her employment.

42. As a proximate result of the termination of BRANIGAN'S employment, she lost wages, benefits and other forms of compensation associated with the employment.

WHEREFORE, BRANIGAN demands judgment against LYNN as follows:

A. Back pay and benefits;

B. Attorney's fees and costs;

C. Injunctive relief;

D. Liquidated damages; and

E. Such other relief as this Court shall consider to be fair and equitable.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed.R.Civ.P. 38(b), Plaintiff hereby demands a trial by jury on all issues triable of right by jury.

/s/ Arthur Schofield, Esq.
ARTHUR T. SCHOFIELD, P.A.
Via Jardin Building
330 Clematis Street, Suite 207
West Palm Beach, Florida 33401
(561) 655-4211
Fax (561) 655-5447
Fla. Bar No. 984434
aschofield@flalabor.com

ATTORNEY FOR PLAINTIFF